***********
The Court of Appeals, upon review of this matter, affirmed the part of the Commission's Opinion and Award that provided that the plaintiff is not barred from compensation because of constructive refusal of suitable employment; however, the Court remanded for further findings on the issue of whether the plaintiff has proved the existence of a disability that would entitle him to compensation under the Workers' Compensation Act.
By Order of the Full Commission, this matter was remanded to Deputy Commissioner Bradley W. Houser, and a hearing was held by Deputy Commissioner Houser on February 21, 2007. Thereafter, the depositions of Donald Woodburn, M.D., Clifford Wheeless III, M.D., Stephanie Yost, and Dwanda Scott were admitted into the record by the Deputy Commissioner. The parties were given opportunity to brief the matter on remand, and a hearing on remand was *Page 2 
held before the Full Commission on March 12, 2008. Former Commissioner Thomas J. Bolch was a member of the panel that initially heard this appeal, but has been replaced in this matter by Commissioner Danny Lee McDonald.
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Adrian A. Phillips and the briefs and arguments on appeal. The appealing party has shown good ground to receive further evidence or to amend the holding of the Deputy Commissioner's Opinion and Award. Accordingly, the Full Commission hereby REVERSES the decision of the Deputy Commissioner and enters the following Opinion and Award. Pursuant to the February 21, 2006, Opinion of the Court of Appeals in this case, the Full Commission modifies its original Opinion and Award in this matter as provided herein.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission that has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated and that there is no question as to misjoinder or nonjoinder of parties.
3. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at the time of the alleged injury and/or occupational disease and an employee-employer relationship existed between the parties.
4. At the time of the *Page 3 
incident giving rise to this claim, Specialty Risk Services was the carrier on the risk.
5. The plaintiff sustained an injury on or about May 26, 2001, and the defendants have accepted this claim pursuant to an Industrial Commission Form 60.
6. The plaintiff's average weekly wage on the relevant dates was $688.68, yielding a compensation rate of $459.14.
7. The plaintiff last worked for the defendant-employer on April 15, 2002.
8. In addition to the foregoing, the parties stipulated to the following documents:
 a. The plaintiff's medical records;
 b. The defendants' response to discovery and documents produced therewith;
 c. All Forms filed with the Industrial Commission, including Forms 18, 19, 33, 33R, 60, 61, 62 and 63, and all Motions filed with the Industrial Commission and Orders regarding the same; and
 d. All of the plaintiff's employment records, personnel records or other documents from defendant-employer.
 ***********
Based upon all the competent evidence of record, and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. The plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with the defendant-employer to his ribs on May 26, 2001. The defendants admitted the compensability of this incident and the plaintiff's rib injury through the filing of an Industrial Commission Form 60. *Page 4 
2. Subsequent to his admittedly compensable injury by accident, the plaintiff sought medical treatment and was diagnosed as having sustained a contusion, an intercostal strain and intercostal neuritis. Intercostal refers to the muscles or spaces between the ribs. Additionally, the plaintiff was released immediately to return to light-duty work with restrictions of not pushing or pulling over twenty (20) pounds. This weight amount was later reduced to ten (10) pounds.
3. The plaintiff's treating physician eventually assigned a fifteen percent (15%) permanent partial impairment rating to his left arm.
4. Thereafter, the plaintiff returned to and continued to work for the defendant-employer. The position to which the plaintiff returned to work was Fashion Bath Specialist, the title of the position in which he was working at the time of his injury by accident. The job description for this position states that someone working in this job would be required to "handle" items weighting as much as fifty (50) pounds.
5. Regarding the plaintiff's restrictions and the requirements of his "light duty job," the defendants assert that his restrictions were accommodated. However, there is no credible evidence of record upon relating to any specific modifications or purported accommodations made by defendants. Moreover, the plaintiff, whose testimony is accepted as credible, testified that his supervisors and co-workers often complained and expressed frustration regarding his lifting restrictions following his return to work.
6. On April 15, 2002, the plaintiff reported to work approximately thirty-five (35) minutes prior to the start of his shift. The plaintiff took this time to approach Kyndall McNair, the defendant-employer's assistant manager, to discuss his concerns regarding the defendant-employer's non-compliance with his restrictions and the problems this was creating. *Page 5 
Ms. McNair then asked Audra Benfield, the defendant-employer's personnel training coordinator, to join the discussion. During the meeting, the plaintiff testified that Ms. McNair was rude and that she thrust her hand into his face. Ms. McNair testified that it was the plaintiff who was rude and that he also displayed threatening behavior. Following this meeting, the plaintiff was terminated for the stated reason of being insubordinate.
7. Pursuant to the credible evidence of record, it is the defendant-employer's policy to have a witness present when disciplinary action is taking place. The Full Commission finds that it is reasonable to infer from Ms. McNair's actions that she intended to discipline the plaintiff when she asked a witness to be present for her meeting with him. Based upon the entire record of credible evidence, the Full Commission gives greater weight to the plaintiff's testimony regarding the circumstances of his termination as opposed to that of Ms. McNair.
8. Based upon the credible evidence of record, the defendants have failed to prove that the plaintiff's termination was for misconduct or fault for which a non-disabled employee would also have been terminated. In fact, the credible evidence of record supports a finding that the plaintiff's termination was directly related to his assigned light-duty work restrictions and the defendant-employer's inability to reasonably accommodate those restrictions. Accordingly, the Full Commission finds that the plaintiff did not constructively refuse suitable work.
9. The plaintiff testified at the hearing before the Deputy Commissioner that he has been unemployed since the date of his termination with the defendant-employer. The plaintiff testified that he has made extensive efforts to find other employment within his restrictions by answering newspaper job ads, using internet job placement websites, and has sending his resume to prospective employers. Though plaintiff testified that he has applied for over 300 positions, *Page 6 
the Full Commission finds that there is insufficient documentary evidence of record, beyond the plaintiff's own testimony, to show that plaintiff has made a reasonable job search.
10. Donald Woodburn, M.D., has served as the plaintiff's primary care physician since 2001, and continues to treat the plaintiff for "non-cardiac" chest pain. Dr. Woodburn testified at deposition that the plaintiff's chest pain is typical of or mimics those of a heart attack, though work-ups by a cardiologist have concluded that the plaintiff's pain is not related to a cardiological problem. Dr. Woodburn testified that the plaintiff suffers from significant restrictions in the use of his left arm and "cannot do anything overhead because it stresses the rib cage and increases his pain." Based on the plaintiff's ongoing chest pain, Dr. Woodburn was of the opinion, and the Full Commission finds as fact, that the plaintiff is not capable of gainful employment.
11. Clifford Wheeless, M.D., a board certified orthopedic specialist also provided deposition testimony in this matter. Dr. Wheeless has diagnosed plaintiff with an atypical form of costochondritis caused by the trauma to plaintiff's chest and ribs as a consequence of the work-related accident on May 26, 2001. Dr. Wheeless characterized the plaintiff's costochondritis as an "insufficiency fracture" that is akin to a stress fracture with accompanying cartilage injury where the ribs meet the sternum. Dr. Wheeless stated that such fractures tend not to heal normally, restricting one's ability to perform lifting activities and becoming a "major nuisance" with symptoms that mimic a myocardial infarction, or heart attack. Although Dr. Wheeless would not say that plaintiff is incapable of gainful employment, he testified that plaintiff should have lifting restrictions and should not drive more than one hour a day because of various pain medications and analgesics prescribed to the plaintiff to relieve his ongoing pain. *Page 7 
12. The defendants have employed two vocational rehabilitation specialists in this matter, Dwanda Scott and Stephanie Yost, both of whom testified in this matter. Ms. Scott was of the opinion that the plaintiff is capable of some employment; however, the Full Commission gives little weight to her opinion testimony because Ms. Scott never met with plaintiff and merely prepared an assessment based on information provided to her by the defendants. Stephanie Yost, who did meet with plaintiff, was also of the opinion that the plaintiff is capable of some employment. However, a review of her testimony shows that she was not aware of the extent of the plaintiff's physical restrictions or that the plaintiff is limited to driving only one hour per day.
13. Based on the totality of the evidence of record, and giving greatest weight to the plaintiff's treating physician, Dr. Woodburn, the Full Commission finds that the plaintiff has shown through medical evidence, in particular the testimony of Dr. Woodburn, that he is physically incapable of work in any employment as a consequence of the May 26, 2001 injury by accident.
14. As the result of his May 26, 2001 injury by accident, the plaintiff has been unable to earn any wages in any employment for the period of April 16, 2002, through the date of hearing before the Deputy Commissioner and continuing.
15. There is insufficient evidence upon which to find that the defendants' actions in defense of this case were based upon stubborn, unfounded litigiousness.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 8 
1. The plaintiff sustained an injury by accident arising out of and in the course of his employment with the defendant-employer on May 26, 2001. N.C. Gen. Stat. § 97-2(6).
2. Based upon the credible evidence of record, the defendants have failed to prove that the plaintiff's termination was for misconduct or fault for which a non-disabled employee would also have been terminated.Seagraves v. Austin Company of Greensboro, 123 N.C. App. 228,472 S.E.2d 397 (1996). Accordingly, the plaintiff did not constructively refuse suitable work. Id.; and N.C. Gen. Stat. § 97-32.
3. In order to award compensation to a claimant, the Commission must find that the claimant has shown disability. Hilliard v. Apex CabinetCo., 305 N.C. 593, 290 S.E.2d 682 (1982). A claimant may meet this burden of proof through the "production of evidence that he is physically incapable, as a consequence of the work related injury, of work in any employment." Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993). In the present case, the plaintiff has shown through medical evidence, in particular the testimony of Dr. Woodburn, that he is physically incapable of work in any employment as a consequence of the May 26, 2001 injury by accident. Id. *Page 9 
4. As the result of his May 26, 2001 injury by accident, the plaintiff is entitled to receive temporary total disability compensation at the weekly rate of $459.14 for the period of April 16, 2002 through the date of hearing before the Deputy Commissioner and continuing until such time as he returns to work, or further Order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
5. As the result of his May 26, 2001 injury by accident, the plaintiff has sustained a fifteen percent (15%) permanent partial impairment rating to his left arm. N.C. Gen. Stat. § 97-31(24).
6. As the result of his May 26, 2001 injury by accident, the plaintiff is entitled to have the defendants pay for all related medical expenses incurred or to be incurred, as reasonably required to effect a cure, give relief, or lessen the period of disability. N.C. Gen. Stat. §§97-2(19); 97-25; and 97-25.1. In addition, the defendants have the option to provide vocational rehabilitation to the plaintiff.Id.
7. Because there is insufficient evidence upon which to find that the defendants' actions in, and defense of, this case were based upon stubborn, unfounded litigiousness, the plaintiff is not entitled to sanctions or attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. The defendants shall pay to the plaintiff temporary total disability compensation at the weekly rate of $459.14 for the period of April 16, 2002, through the date of hearing before the Deputy Commissioner and continuing until such time as the plaintiff returns to work, or further Order of the Industrial Commission. The portion of this compensation that has accrued shall be paid to the plaintiff in lump sum. This compensation is subject to the attorney's fee approved herein. *Page 10 
2. The defendants shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of his May 26, 2001 injury by accident, as reasonably required to effect a cure, give relief, or lessen the period of disability.
3. The defendants shall pay to the plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded to the plaintiff. The portion of such fee that is based upon compensation that has accrued shall be paid directly to the plaintiff's counsel in lump sum; thereafter, the defendants shall pay to the plaintiff's counsel every fourth check of the plaintiff's compensation.
4. The defendants shall pay the costs.
This 14th day of April 2008.
 S/______________________
 CHRISTOPHER SCOTT
 COMMISSIONER
CONCURRING:
S/______________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING IN PART AND DISSENTING IN PART:
S/______________________ DIANNE C. SELLERS COMMISSIONER *Page 11